Slip Op. 19-88

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DILLINGER FRANCE S.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION and SSAB ENTERPRISES LLC, <br><br> Defendant-Intervenors. | Before: Gary S. Katzmann, Judge <br> Court No. 17-00159 |

### OPINION

[Commerce's Final Results of Redetermination Pursuant to Court Remand are sustained.]

Dated: July 17, 2019

Marc E. Montalbine, DeKieffer & Horgan PLCC, of Washington, DC, for plaintiff. With him on the brief were Gregory S. Menegaz and Alexandra H. Salzman.

Kelly Krystyniak, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Tara K. Hogan, Assistant Director and Vito S. Solitro, Attorney. Of counsel on the brief was Jessica DiPietro, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Alan H. Price, Wiley Rein, LLP, of Washington, DC, for defendant-intervenor, Nucor Corporation. With him on the brief were Christopher B. Weld and Stephanie M. Bell.

Roger B. Schagrin, Schagrin Associates, of Washington DC, for defendant-intervenor, SSAB Enterprises LLC.

Katzmann, Judge:  The court returns to Plaintiff Dillinger France S.A.'s ("Dillinger") challenge to the Department of Commerce's ("Commerce") final affirmative determination of sales at less-than-fair value in its antidumping investigation of certain carbon and alloy steel cut-to-length plate from France.  <u>Certain Carbon and Alloy Steel Cut-To-Length Plate from Austria, Belgium, France, the Federal Republic of Germany, Italy, Japan, the Republic of Korea, and Taiwan: Amended Final Affirmative Antidumping Determinations for France, the Federal Republic of Germany, the Republic of Korea and Taiwan and Antidumping Duty Orders</u> ("<u>Final Determination</u>"), 82 Fed. Reg. 24,096 (May 25, 2017), P.R. 456 and accompanying Issues and Decision Memorandum (Mar. 29, 2017), P.R. 445.  Before the court now are Commerce's Final Results of Redetermination Pursuant to Court Remand ("<u>Remand Results</u>") (Dep't Commerce Mar. 11, 2019), ECF No. 56, which the court ordered in <u>Dillinger France S.A. v. United States</u>, 42 CIT __, 350 F. Supp. 3d 1349 (2018).  In its previous decision, <u>id.</u> at 1377, the court sustained most of Commerce's determination, including Commerce's use of partial adverse facts available ("AFA"), but remanded to Commerce to reconsider and explain how it applied partial AFA to certain of Dillinger's affiliated service center sales.  On remand, Commerce modified and explained its application of partial AFA, though Dillinger's antidumping margin remained unchanged.  <u>Remand Results</u> at 1–2.  Defendant the United States ("the Government") and Dillinger request that the court sustain Commerce's <u>Remand Results</u>.  Def.'s Resp. to Comments on the Dep't of Commerce's Remand Results ("Def.'s Br."), Apr. 24, 2019, ECF No. 59; Pl.'s Reply to Comments on Remand Results ("Pl.'s Br."), Apr. 24, 2019, ECF No. 60.  Defendant-Intervenor Nucor Corporation ("Nucor"), however, argues that Commerce's <u>Remand Results</u> are unsupported by substantial evidence and contrary to law because Commerce failed to adequately explain its use of record price data and that use of this data is contrary to the purpose of the AFA

statute. Def.-Inter. Nucor Corp.'s Comments on Final Results of Redetermination Pursuant to Court Remand ("Nucor's Br."), Apr. 9, 2019, ECF No. 58. The court sustains Commerce's Remand Results.

## BACKGROUND

The relevant legal and factual background of the proceedings involving Dillinger has been set forth in greater detail in Dillinger, 350 F. Supp. 3d at 1356–58. Information pertinent to the instant opinion is set forth below.

On May 15, 2017, Commerce issued its Final Determination imposing an antidumping margin of 6.15 percent on Dillinger's cut-to-length plate products. Id. at 1357. Dillinger challenged several aspects of Commerce's Final Determination, including its application of partial AFA to the downstream sales of some affiliated service centers. Id. at 1361. Dillinger had been able to report the prices for all of its affiliated service centers' sales, but for some of the transactions, Dillinger had been unable to identify which manufacturer produced the plate that had been sold. Id. at 1357. For those transactions in which the manufacturer remained unknown, Commerce applied partial AFA, specifically by (1) attributing all unidentified producer sales to Dillinger and (2) replacing the reported sales prices for these transactions with the "highest non-aberrational net price." Id. at 1357–58.

The court determined that Commerce "permissibly resorted to partial AFA," but that "Commerce did not adequately justify its decision to ignore existing record price data and replace this record evidence with the highest non-aberrational net price." Id. at 1361. Noting that AFA can only be applied to fill gaps in the record and that the accuracy of the price data had not been called into question, the court held that "Commerce did not explain what authority permitted it to replace known [price] information with adverse facts available." Id. at 1364. The court remanded

to Commerce to better explain or reconsider how it applied AFA and otherwise sustained its Final Determination. Id. at 1377.

On remand, Commerce continued to apply partial AFA to sales where the plate manufacturer was unknown but did not use the highest non-aberrational net price. Instead, "recogniz[ing] the [c]ourt's statement that 'the reliability of the reported sales prices has not been called into question and there is no informational gap in the sales prices for Commerce to fill,'" Remand Results at 4, Commerce treated the relevant "transactions as Dillinger-produced plate" and "relied on the sale prices as reported." Id. at 6–7. Commerce also noted that "in our application of partial AFA, there is no impact on Dillinger France's estimated weighted-average dumping margin." Id. at 4. Nucor submitted its comments on the Remand Results on April 9, 2019, and Dillinger and the Government responded to Nucor's comments on April 24, 2019. Nucor's Br.; Pl.'s Br.; Def.'s Br.

## DISCUSSION

Commerce's Remand Results are consistent with the court's remand order and previous opinion. Nonetheless, Nucor contends that the Remand Results were unsupported by substantial evidence and not in accordance with law because (1) Commerce's decision to use the reported sales price data, rather than the highest non-aberrational net price, is not sufficiently adverse to Dillinger to "effectuate the purpose of the AFA statute" and (2) Commerce did not adequately explain its reasons for applying AFA in this manner. Nucor's Br. at 5–8. The court is not persuaded by these arguments.

Contrary to Nucor's assertions, Commerce complied with the court's instruction to adequately explain and justify its method of applying partial AFA:

> [W]e understand the [c]ourt's decision to mean that, while Commerce's application
> of partial AFA to these downstream sales was supported by substantial evidence,

> our method of applying partial AFA (by replacing the reported sales prices with the highest non-aberrational net price among Dillinger France's downstream sales), in this particular case, was not adequately justified. Specifically, we relied on the [c]ourt's statement that 'the reliability of the reported sales prices has not been called into question and there is no informational gap in the sales prices for Commerce to fill.' Given this holding, and contrary to Nucor's argument that we should use the highest non-aberrational price as partial AFA, we find that we cannot ignore record information that is not in dispute, pursuant to the facts on the record of this investigation and the [c]ourt's decision . . . [W]e have reevaluated the record evidence and determine that, because of the small number of affected transactions whose prices are used as a basis for normal value and which are actually compared to U.S. sale prices, these home market transactions have no measurable impact on Dillinger France's estimated weighted-average dumping margin. Thus, as our application of partial AFA to calculate the estimated weighted-average dumping margin, we: 1) treated these downstream home market sales transactions as Dillinger France-produced plate, rather than treating these transactions as sales of plate produced by an unrelated manufacturer; and 2) relied on the sale prices as reported.

Remand Results at 6–7.

Commerce's method of applying partial AFA also comports with the statutory purpose of AFA. "An AFA rate selected by Commerce must reasonably balance the objectives of inducing compliance and determining an accurate rate, " SolarWorld Americas, Inc. v. United States, 41 CIT __, __, 229 F. Supp. 3d 1362, 1366 (2017) (citing F.lli De Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)), and as discussed in Dillinger, 350 F. Supp. 3d at 1364, Commerce may apply AFA only to informational gaps in the record. Here, Commerce permissibly applied partial AFA to replace information that is missing from the record -- the manufacturer of some of the plate in the disputed transaction -- by attributing all sales to Dillinger.

Nucor contends that Commerce should have also substituted the highest non-aberrational net price for the reported sales data to adequately deter future noncooperation by Dillinger. Nucor's Br. at 4, 6–7. However, Nucor provides no evidence that the rate selected is not sufficiently adverse; indeed, as Commerce notes in the Remand Results, using the reported sales

prices had "no impact on Dillinger France's estimated weighted-average dumping margin." Remand Results at 4.  Additionally, as the "reliability of the reported sales prices has not been called into question," Dillinger, 350 F. Supp. 3d at 1364, Commerce's decision to use the sales prices "balance[s] the objectives of inducing compliance and determining an accurate rate," see SolarWorld, 229 F. Supp. 3d at 1366 (citing F.lli De Cecco, 216 F.3d at 1032).  Commerce's use of the reported sales data is thus consistent with the statutory purpose of AFA, and its detailed explanation fulfills the court's directive to justify its method of applying partial AFA in this case.

## CONCLUSION

Commerce's Remand Results are sustained.

**SO ORDERED.**

                                                   /s/   Gary S. Katzmann
                                                  Gary S. Katzmann, Judge

Dated: July 17, 2019
      New York, New York