## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: The Honorable Gary S. Katzmann, Judge

_____

|  |  |  |
|---|---|---|
| DILLINGER FRANCE S.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | Ct. No. 17-00159 |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SSAB ENTERPRISES LLC, *et. al.*, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

### PLAINTIFF'S MOTION FOR
### CLARIFICATION OF SCOPE OF REMAND, TO STAY
### REMAND PROCEEDINGS AND FOR ORAL ARGUMENT THEREON

Pursuant to Rules 7(b) & (c) of the Rules of this Court, Plaintiff, Dillinger France S.A. ("Dillinger"), respectfully requests the Court to clarify the scope of its remand order of February 18, 2021, to stay further remand proceedings until the scope of the remand is resolved and to hold oral argument on these issues.

Despite the fact that the error identified in the determination of the U.S. Department of Commerce ("Commerce") can be easily corrected by revising a few lines of code in its SAS margin calculation program, Commerce has issued Plaintiff an extensive supplemental questionnaire seeking information that is not relevant to the narrow issue on remand and that will have no effect on the recalculation of the duty deposit rate (*see* **Exhibit 1**). Requiring Plaintiff to respond to the burdensome supplemental questionnaire will needlessly increase the cost of

litigation and not result in the collection of any information relevant to this case. Moreover, given that the correction of Commerce's error would only decrease Dillinger's weighted-average dumping margin from 6.15% to 5.91% and the fact that this litigation has been pending now for four years, we hope that the remand redetermination can be completed in a manner that respects the efficient use of administrative, judicial and company resources and avoids any needless increase in the costs of litigation.

It is on this basis that Plaintiff respectfully requests that the Court clarify whether the information requested by Commerce in its supplemental questionnaire falls within the scope of the remand proceedings. Plaintiff further requests that the deadline for issuance of the redetermination be stayed pending clarification of the scope of the remand. Plaintiff also seeks oral argument on these issues in order to fully inform the Court of the relevant facts and to explore an amicable settlement to this litigation.

Plaintiff has submitted comments with Commerce requesting the withdrawal of the supplemental questionnaire and the correction of the error in the SAS program (*see* **Exhibit 2**). Plaintiff's counsel has also exchanged correspondence with the Department of Justice attorney responsible for this action in an attempt to resolve this matter. To date, these discussions have not resulted in an amicable resolution.

## <u>Discussion</u>

In its remand order of February 18, 2021, the court ordered Commerce to "issue a redetermination consistent with the opinion of the Court of Appeals" in Case No. 2019-2395 (Dec. 3, 2020). <u>Dillinger France S.A. v. United States</u>, Ct. No. 17-00159 (CIT Feb. 18, 2021) (order). In the opinion of the Court of Appeals, the court explained the problem with Commerce's original determination on this issue as follows:

Commerce accordingly adjusted Dillinger's reported costs for non-prime plate "to reflect the sales values recorded in {Dillinger's} normal books and records" and allocated the difference to the costs for Dillinger's prime plate. In doing so, Commerce reduced the cost of non-prime plate and allocated a greater portion of cost to prime plate based on the selling price of non-prime plate.

Dillinger France S.A. v. United States, 981 F.3d 1318, 1321 (Fed. Cir. 2020) (citations omitted).

Thus, the problem identified by the Court of Appeals was Commerce's shifting of costs from non-prime merchandise to prime merchandise. There was no error identified in the underlying cost information reported by Dillinger; nor has any party raised any such arguments in this proceeding. Rather, it is simply the shifting of Dillinger's reported costs by Commerce from non-prime to prime plate. Commerce accomplished this cost shifting with only a few lines of code in its SAS program, and it is only these lines of code that need to be corrected. When these corrections are made, the weighted-average dumping margin for Dillinger decreases from 6.15% to 5.91%. *See* Comments on Supplemental Questionnaire (March 19, 2021) (Bar Code: 4102102), attached to this motion as **Exhibit 2**.

It must be understood that Commerce accepted and verified the reported costs of both prime and non-prime material during the investigation and noted no problems in the underlying costs or how the non-prime CONNUMs were being reported. Commerce simply took a portion of the costs reported for non-prime plate and shifted it to the cost of prime plate. Because the amount of the underlying costs reported for non-prime plate and the manner in which the costs were calculated were never challenged by Commerce or any other party to this proceeding, this issue is final and cannot be challenged now. Commerce's shifting of reported costs from non-prime plate to prime plate was accomplished through a few lines of code in its SAS program and it is only these lines of code that need to be changed in order to issue a redetermination consistent with the opinion of the Court of Appeals.

It cannot be disputed that Plaintiff's only challenge to the cost determination was the shifting of reported costs from non-prime to prime plate.  This is clear from the issues presented in Plaintiff's opening brief, which stated:

> Issue Four: Whether the Department's adjustment to Dillinger's reported costs of production by shifting actual costs incurred in the production of non-prime plate to prime plate is supported by substantial evidence on the administrative record and otherwise in accordance with law?

Dillinger Public Memorandum of Points and Authorities In Support of Motion for Judgment on the Agency Record, 2 (Dec. 18, 2017) (Doc. 27).  In the Government's response brief, the Government also stated the issue as dealing with cost shifting:

> Whether Commerce's adjustment of Dillinger's reported costs of production by shifting actual costs incurred in the production of non-prime plate to prime plate is supported by substantial evidence and in accordance with law.

U.S. Response Brief, 2 (Feb. 16, 2018) (Doc. 32).  In this Court's opinion, the Court also properly described the issue as dealing with cost shifting and, in fact, entitled its entire discussion on this point as "**Cost Shifting**."  Dillinger France S.A. v. United States, 350 F. Supp. 3d 1349, 1373 (CIT 2019).

In addition, none of the information requested in Commerce's supplemental questionnaire is relevant to the narrow issue on remand and the recalculation of the duty deposit rate.  Because no non-prime merchandise was sold to the United States, none of the French sales of non-prime merchandise would be matched to U.S. sales or used in the margin calculations.  Thus, the prices and costs of non-prime merchandise sold in the home market play no role in the margin calculation, either for constructed value purposes (CV) or for the analysis of sales at less than the costs of production (COP).  The cost of non-prime plate could be increased to 1 million Euros/ton or reduced to 1 Euro/ton and it would have no impact on the margin calculation.

The supplemental questionnaire is also unduly burdensome. Dillinger France has already provided complete information to the best of its ability on the product characteristics, costs and production process for non-prime plate. It has also fully explained the limitations on tracking the product characteristics for non-prime material. *See, e.g.*, Section A Response at A-19 (June 29, 2016); P.R. 154, C.R. 70; Section D Response at D-12 & App. D-9 (July 15, 2016); P.R. 178, C.R. 110.; Supplemental Section D Response at 4-5 & App. SD-8 (Aug. 17, 2016); P.R. 202, C.R. 169. Commerce has accepted and verified this information and no party has brought any challenge to this information.

To require Dillinger to go back into records that are now more than five years old is not designed to collect any information relevant to the narrow issue on remand or the recalculation of the duty deposit rate. Rather, the supplemental questionnaire causes a needless and undue hardship to Dillinger and its staff, especially during this time of COVID restrictions in Europe. Requiring Dillinger to respond to the supplemental questionnaire would also cause the company substantial costs in legal, consulting and translation fees with no conceivable effect upon the dumping margin calculation. Accordingly, the Court should, at minimum, require Commerce to explain how the requested information would be relevant to the redetermination before requiring Dillinger to respond to the supplemental questionnaire.

<u>Conclusion</u>

We therefore respectfully request that the Court clarify that the information requested by Commerce in its supplemental questionnaire is not within the scope of the remand proceedings and direct Commerce to proceed with issuance of its redetermination without requiring Dillinger to respond to the supplemental questionnaire. We also request that the Court stay the deadline for

issuance of the redetermination pending clarification of the scope of the remand and hold oral argument on these issues.

Proposed orders are submitted with this motion for the Court's consideration.

Respectfully submitted,

/s/ *Marc E. Montalbine*
Marc E. Montalbine
J. Kevin Horgan
Gregory S. Menegaz
Alexandra H. Salzman
**deKieffer & Horgan, PLLC**
1090 Vermont Ave., N.W.
Suite 410
Washington, D.C. 20005
Tel: (202) 783-6900
Fax: (202) 783-6909
Email: montalbine@dhlaw.de
Date: March 25, 2021              *Counsel to Plaintiff*

Exhibit 1



UNITED STATES DEPARTMENT OF COMMERCE<br>
International Trade Administration<br>
Washington, D.C. 20230

March 17, 2021

Dillinger France S.A.<br>
c/o: Gregory S. Menegaz, Esq.<br>
DeKieffer & Horgan, PLLC<br>
Suite 900B<br>
1455 Pennsylvania Ave., N.W.<br>
Washington, D.C., 20004

Re:    Remand Redetermination – Certain Carbon and Alloy Steel Cut-to-Length Plate from France: Dillinger France S.A.

Dear Mr. Menegaz:

This concerns the remand redetermination concerning the less-than-fair-value investigation of certain carbon and alloy steel cut-to-length plate from France and your client Dillinger France S.A. (Dillinger). Please file your supplemental response in accordance with the filing requirements and guidelines (including the guidelines regarding English translations) as outlined in the Department of Commerce's (Commerce) original questionnaire, before **5 p.m. Eastern Time, March 24, 2021.**

Please file your response electronically using Enforcement and Compliance's Antidumping and Countervailing Duty Centralized Electronic Service System (ACCESS). An electronically filed document must be received successfully in its entirety by ACCESS by the time and date identified above. Commerce has temporarily modified certain of its requirements for serving documents containing business proprietary information until further notice.[1] Additionally, on the date of this letter, alternative arrangements must be made for manual filings that are excepted from the electronic filing requirement. If an exception applies and you are unable to file your submission electronically, please contact an official in charge at least 72 hours before the due date.

Commerce must conduct this remand redetermination in accordance with the deadline established by the United States Court of International Trade. If you are unable to respond completely to every question in the attached questionnaire by the established deadline, or are

---

[1] *See Temporary Rule Modifying AD/CVD Service Requirements Due to COVID-19*, 85 FR 17006 (March 26, 2020), and *Temporary Rule Modifying AD/CVD Service Requirements Due to COVID-19; Extension of Effective Period*, 85 FR 29615 (May 18, 2020); and *Temporary Rule Modifying AD/CVD Service Requirements Due to COVID-19; Extension of Effective Period*, 85 FR 41363 (July 10, 2020),



unable to provide all requested supporting documentation by the same date, you must notify the official in charge and submit a request for an extension of the deadline for all or part of the questionnaire response.  If you require an extension for only part of your response, such a request should be submitted separately from the portion of your response filed under the current deadline.  Statements included within a questionnaire response regarding a respondent's ongoing efforts to collect part of the requested information, and promises to supply such missing information when available in the future, do not substitute for a written extension request.  Section 351.302(c) of Commerce's regulations requires that all extension requests be in writing and state the reasons for the request.  Any extension granted in response to your request will be in writing; otherwise the original deadline will apply.

If Commerce does not receive either the requested information or a written extension request before 5 p.m. ET on the established deadline, we may conclude that your company has decided not to cooperate in this proceeding.  Commerce will not accept any requested information submitted after the deadline.  As required by section 351.302(d) of our regulations, we will reject such submissions as untimely.  Therefore, failure to properly request extensions for all or part of a questionnaire response may result in the application of partial or total facts available, pursuant to section 776(a) of the Act, which may include adverse inferences, pursuant to section 776(b) of the Act.

Should you have any questions about this matter, please contact Kristin Case at (202) 482-3174.

Sincerely,

Taija A. Slaughter
Lead Accountant

## General Instructions

1. In accordance with 19 CFR 351.303(e), all documents must be provided in their original form and <u>with English translations</u>.

2. All worksheets must be submitted with narrative responses that will allow the Commerce reviewer to follow the flow of the worksheet and any adjustments necessary to calculate the submitted costs. The worksheets should demonstrate how the costs recorded in your company's accounting records were adjusted in order to derive the amount reported.

3. All responses to this supplemental questionnaire should be limited to the questions contained herein. Unsolicited new information or revisions of previously requested information, not pertinent to this supplemental questionnaire, may be rejected, pursuant to 19 CFR 351.301. If your responses to the questions that follow results in a change to your cost of production database, provide a revised electronic cost database in SAS® and Excel® formats.

4. Provide the Excel® versions of all spreadsheets used in the preparation of your response to this supplemental questionnaire.

## Section D Supplemental Questions

In <u>Dillinger France S.A. v. United States</u>, 981 F.3d 1318 (December 3, 2020), the United States Court of Appeals for the Federal Circuit (CAFC) ordered a remand "for Commerce to determine the actual costs of prime and non-prime products." Commerce's antidumping questionnaire not only provides detailed instructions concerning CONNUM construction, but also explains that respondents must report CONNUM-specific costs and that such costs must reflect cost differences attributable to the physical characteristics of the merchandise under consideration (MUC). Despite these explicit instructions, rather than report the physical characteristics of non-prime merchandise and report the cost differences attributable to the physical characteristics, you simply stated that you did not know any of the physical characteristics with certainty and, at best, could provide minimum physical dimensions for a handful of transactions. Moreover, rather than report the actual costs attributable to the production of non-prime CONNUMs, you simply reported the same variable for each non-prime CONNUM (CONNUMs which were only differentiated by an estimate of the minimum physical dimensions) and then reported the same cost for each non-prime CONNUM. Our review of the record reveals that, rather than submit actual costs for non-prime products, you valued all non-prime products at the average cost of prime products.

1. We cannot follow the Court's order without first knowing all the details about the non-prime products produced. For each of the non-prime CONNUMs included in your cost of production (COP) database, you must:
    a. Identify all physical characteristics of each product as defined by Commerce in this proceeding.

b. Submit documentation from your system (e.g., production documentation, inventory ledger pages, quality control reports, etc.) to demonstrate the reported physical characteristics of the non-prime products, that the product is, in fact, good production and that it meets the physical characteristics for scope merchandise as defined by Commerce in this proceeding. In other words, please submit documentation to support that each of the non-prime CONNUMs were in-scope merchandise and thus properly reported in your sales and COP databases.

2. So that Commerce can comply with the CAFC instructions and calculate the actual cost of non-prime products, please respond to the following. For the following questions, our reference to CONNUMs relates to CONNUMs after you have identified all physical characteristics of the non-prime products per question 1 above. We request that you provide a new cost database containing only the originally reported non-prime merchandise. In this new database, after you have identified all physical characteristics of the non-prime merchandise produced per question 1 above, you should show the new reported CONNUM, the production quantity, the related originally reported CONNUM, and the actual cost of manufacturing by cost element (i.e., materials, labor, variable overhead and fixed overhead).

a. For each non-prime CONNUM included in your submitted COP database, provide a monthly inventory movement schedule which includes the following information on both a quantity and value basis: beginning inventory, production, sales, other adjustments, and ending inventory.

b. Explain the nature of the 'other adjustments' included in the schedule reported above.

c. Demonstrate how the POI beginning and ending inventory of non-prime merchandise reconciles to both your inventory ledger and trial balance. Provide screen shots from your accounting system as support.

d. Demonstrate how the December 31, 2015 ending inventory shown in the above schedule reconciles to your audited financial statements. Provide screen shots from your accounting system as support for all reconciling items.

e. For all non-prime CONNUMs please provide the following.

   i. Provide a cost database as noted above which shows the POI production quantity and actual cost of manufacturing based on the physical characteristics defined by Commerce.

   ii. For each CONNUM, identify the single product with the highest POI production quantity and provide a schedule which shows, for each month of the POI, the monthly production quantity and actual cost of manufacturing. Segregate the actual monthly cost of manufacturing between material costs and conversion costs.

   iii. For each of the products identified in response to the above question, identify the month with the highest POI production quantity and provide a schedule of the corresponding production runs and the corresponding reported actual cost of manufacturing.

   iv. For each of the products identified in response to the above question, submit detailed costing documentation which shows how each of the cost elements (i.e., DIRMAT, DIRLAB, etc.) were calculated and how the cost for each product reflect the physical characteristics defined for this proceeding.

v.   For each of the products in the preceding question, identify and provide a detailed discussion of the production processes through which the product passed, identify the specific defects that caused the product to be classified as non-prime, explain when you determined that the product was non-prime and how the product continues to represent good production that meets the physical characteristics as defined for this proceeding.

vi.  Please submit illustrative general ledger/journal entries which show how the products are recorded in your financial-accounting system.  Also, if applicable, submit general ledger/journal entries pertaining to the reclassification of the products from prime to non-prime.

vii. For each of the above products, provide documentation from your system to support the classification of the product as non-prime (e.g., quality control report).

**Exhibit 2**

LAW OFFICES OF

deKIEFFER & HORGAN, PLLC

1090 VERMONT AVENUE, N.W.
SUITE 410
WASHINGTON, D.C. 20005

MARC E. MONTALBINE
TEL 202-783-6900

AFFILIATED OFFICE:
SAARBRÜCKEN, GERMANY

MONTALBINE@DHLAW.DE
DHLAW.COM

March 19, 2021

<u>Electronic Filing</u>

Honorable Wynn Coggins
Acting Secretary of Commerce
Room 18022
U.S. Dept. of Commerce
Washington, D.C. 20230

A-427-828
Pages: 11
Remand Redetermination
OA: KLC

**Public Version**
Business proprietary information
deleted within brackets on pages 2-3
and in Appendix 1.


**May be released under APO**


*Re:*     *Remand Redetermination - Certain Carbon and Alloy Steel Cut-To-Length Plate from France:* **Comments on Supplemental Questionnaire**

Dear Acting Secretary Coggins:

On behalf of Dillinger France S.A. ("Dillinger"), a producer of cut-to-length plate ("CTL Plate") subject to this court action and underlying administrative proceeding, we hereby submit the following comments on the supplemental questionnaire issued by Commerce on March 17, 2021.

The issuance of a supplemental questionnaire is not required in order to comply with the December 3, 2020 opinion of the U.S. Court of Appeals for the Federal Circuit or the ensuing

remand order of the U.S. Court of International Trade from February 18, 2021. Rather, all the

information required to issue a redetermination consistent with the opinion of the Court of

Appeals is already on the record of this case. As explained below, the redetermination requires

Commerce to revise only two lines of code in its SAS program. This change will reduce the

weighted-average dumping margin for Dillinger France from 6.15% to 5.91%.

In its remand order of February 18, 2021, the U.S. Court of International Trade ordered

Commerce to "issue a redetermination consistent with the opinion of the Court of Appeals."

Dillinger France S.A. v. United States, Ct. No. 17-00159 (CIT Feb. 18, 2021) (order). In the

opinion of the Court of Appeals, the court explained the problem with Commerce's original

determination on this issue as follows:

> Commerce accordingly adjusted Dillinger's reported costs for non-prime plate "to
> reflect the sales values recorded in {Dillinger's} normal books and records" and
> allocated the difference to the costs for Dillinger's prime plate. In doing so,
> Commerce reduced the cost of non-prime plate and allocated a greater portion of
> cost to prime plate based on the selling price of non-prime plate.

Dillinger France S.A. v. United States, 981 F.3d 1318, 1321 (Fed. Cir. 2020) (citations omitted).

Thus, the problem identified by the Court of Appeals was Commerce's shifting of costs

from non-prime merchandise to prime merchandise. There was no error identified in the

underlying cost information submitted by Dillinger; nor has any party raised any such arguments

in this proceeding. Rather, it is simply the shifting of Dillinger's reported costs by Commerce

from non-prime to prime merchandise. Commerce accomplished this cost shifting with only a

few lines of code in its SAS program, and it is only these lines of code that need to be corrected.

In its preliminary and final determinations, Commerce increased the reported cost of

prime CONNUMs by [      ]% and decreased the reported cost of non-prime CONNUMs by

[      ]%. *See* Final COP Calculation Memorandum at 2 (March 29, 2017); P.R. 447, C.R. 701;

Preliminary COP Calculation Memorandum at 2 & Attachment 2 (Nov. 4, 2016); P.R. 366, C.R.

405.  These adjustments were combined with a [      ]% adjustment for major inputs to arrive at a

total adjustment to TOTCOM for prime products of [      ]% (*i.e.*, [      ]%+ [      ]%) and an

overall net decrease for non-prime products of [      ]% (*i.e.*, [      ] % - [      ] %).  *See* Final

COP Calculation Memorandum at 2 (March 29, 2017); P.R. 447, C.R. 701.  In the Comparison

Market SAS program, Commerce implemented these adjustments as follows:

> If CONNUM starts with [      ], then TCOMCOP = TOTCOM * [      ][1] *
> (PRODQTY /RQTYCNV);
> Else TCOMCOP = TOTCOM * [      ] * (PRODQTY/RQTYCNV);

*See* Final COP Calculation Memorandum at 4 (March 29, 2017); P.R. 447, C.R. 701.  These

adjustments to the COP database are shown in lines 7398 and 7404 of Attachment I to

Commerce's Final Determination Margin Calculation Memo.  *See* Final Margin Calculations at

Attachment I, p. 36 (March 29, 2017); P.R. 448, C.R. 700.  A copy of the pertinent pages of the

SAS program is contained in **Appendix 1** to these comments.

Accordingly, the only thing that needs to be done in order to comply with the opinion of

the Court of Appeals and stop the shifting of costs from non-prime merchandise to prime

merchandise is to change the SAS code in lines 7398 and 7404 as follows:

> Line 7398: TCOMCOP = TOTCOM * [      ] * (PRODQTY/RQTYCNV);
> Line 7404: TCOMCOP = TOTCOM * [      ] * (PRODQTY/RQTYCNV);

These changes remove the shifting of costs from non-prime merchandise to prime merchandise

while preserving the [      ]% adjustment for major inputs.  After these corrections are made, the

weighted-average dumping margin for Dillinger France decreases from 6.15% to 5.91%.

No new information is required to make this correction and comply with the opinion of

the Court of Appeals.  All the necessary cost information is already on the administrative record

and has already been fully verified.  None of the information requested in Commerce's March

---

[1] This is calculated as [      ].

17, 2021 supplemental questionnaire is relevant to the narrow issue on remand and the recalculation of the duty deposit rate. Because no non-prime merchandise was sold to the United States, none of the French sales of non-prime merchandise would be matched to U.S. sales or used in the margin calculations. This is clear from Commerce's Margin Calculation SAS Program, which specifically restricts the comparison of U.S. and home market sales to the same PRIMEH/U identification (*i.e.*, PRIMEU = CMPRIME). *See* Final Margin Calculations at Attachment II, p. 77 (March 29, 2017); P.R. 448, C.R. 700. A copy of the pertinent pages of the SAS program is contained in **Appendix 1** to these comments. Thus, the prices and costs of non-prime merchandise sold in the home market play no role in the margin calculation, either for constructed value purposes (CV) or for the analysis of sales at less than the costs of production (COP).

The supplemental questionnaire is also unduly burdensome. Dillinger France has already provided complete information to the best of its ability on the product characteristics, costs and production process for non-prime material. It has also fully explained the limitations on tracking the product characteristics for non-prime material. *See, e.g.*, Section A Response at A-19 (June 29, 2016); P.R. 154, C.R. 70; Section D Response at D-12 & App. D-9 (July 15, 2016); P.R. 178, C.R. 110.; Supplemental Section D Response at 4-5 & App. SD-8 (Aug. 17, 2016); P.R. 202, C.R. 169. Commerce has accepted and verified this information and no party has brought any challenge to this information.

To require Dillinger to go back into records that are now more than five years old is not designed to collect any information relevant to the narrow issue on remand or the recalculation of the duty deposit rate. Rather, the supplemental questionnaire and its unusually short one-week deadline cause a needless and undue hardship to Dillinger and its staff, especially during this

4

time of COVID restrictions in Europe.  Moreover, responding to the questionnaire would cause the company enormous costs in legal, consulting and translation fees with no conceivable effect upon the dumping margin calculation.

We therefore respectfully request that Commerce withdraw its March 17, 2021 supplemental questionnaire and proceed to revise its SAS program and margin calculation as described above.

*      *      *

Certain information contained herein is business confidential data that is proprietary. This information is enclosed within brackets ("[ ]").  Such data is marked "CONTAINS BUSINESS PROPRIETARY INFORMATION."  Confidential treatment, subject to administrative/judicial protective order, is requested pursuant to 19 C.F.R. §351.105(c) as this information was given confidential treatment in the underlying investigation.

In accordance with the Department's instructions, we are filing this submission electronically.  We have summarized data in the public version in accordance with the Department's regulations.  We are delivering APO versions to all counsel on the APO list, who have not waived service.

Please let us know if you have any questions regarding this submission.

Sincerely,

J. Kevin Horgan
Marc E. Montalbine
Gregory S. Menegaz
Alexandra H. Salzman*


* Admitted to California Bar; practice
supervised by attorneys of the firm who are
active D.C. Bar members pursuant to D.C. Bar
Rule 49(c)(8).

# Appendix 1

**PUBLIC VERSION**

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-427-828
Investigation
~~Business Proprietary Document~~
ADCVDOpsII:TKS

*Public Version*

| | |
|---|---|
| DATE: | March 29, 2017 |
| MEMORANDUM TO: | The File |
| FROM: | Terre Keaton Stefanova  *TKS*<br>International Trade Compliance Analyst<br>AD/CVD Operations, Office II<br>Enforcement & Compliance |
| THROUGH: | Elizabeth Eastwood  *EE*<br>Program Manager<br>AD/CVD Operations, Office II<br>Enforcement & Compliance |
| RE: | <u>Antidumping Duty Investigation of Certain Carbon and Alloy Steel Cut-To-Length Plate from France</u> |
| SUBJECT: | Final Determination Margin Calculations for Dillinger France S.A. (Dillinger France) |

This memorandum transmits to the file the Department's final determination margin calculation for Dillinger France in the above-referenced investigation. Attachment I to the proprietary version of this memorandum consists of the comparison market computer program log and output. Attachment II to this memorandum consists of the margin calculation program log and output. The public version of this memorandum does not include these attachments.

The Department relied on the same databases as in the *Preliminary Determination*[1] for calculating Dillinger France's margin, except as follows: 1) home market downstream database, named EDCHM04 as shown in the SAS programs (ACCESS barcode 3518710-03); and 2) U.S. sales database, named DFBGUS05 as shown in the SAS programs (ACCESS barcodes 3540935-02).

---

[1] *See Certain Carbon and Alloy Steel Cut-to-Length Plate From France: Preliminary Determination of Sales at Less Than Fair Value*, 81 FR 79437 (November 14, 2016) (*Preliminary Determination*).



# ATTACHMENT I

Comparison Market SAS Program Log and Output

Business Proprietary

(omitted in public version)

# ATTACHMENT II

Margin Calculation SAS Program Log and Output

Business Proprietary

(omitted in public version)