UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| DILLINGER FRANCE S.A., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 17-00159 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| SSAB ENTERPRISES LLC, ET AL. | ) |
| Defendant-Intervenor. | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR CLARIFICATION OF SCOPE OF REMAND**

Defendant United States respectfully requests that the Court deny plaintiff Dillinger France S.A.'s (Dillinger) motion seeking to clarify the scope of the February 18, 2021 remand order, stay further remand proceedings, and hold oral argument on these issues. ECF No. 75. As set forth below, none of the remedies Dillinger seeks are warranted and, indeed, Dillinger prematurely seeks to involve the Court.[1]

**ARGUMENT**

Dillinger appealed this Court's decision, contesting the method Commerce used to calculate its cost of prime and non-prime merchandise. Dillinger App. Br at 28-41. Dillinger

---

[1] In response to the Court's order dated March 26, 2021, Commerce immediately halted remand proceedings. ECF No. 76. Regardless of the outcome of plaintiff's motion, defendant anticipates needing further time for Commerce to complete the remand.

1

also explained to that Court how it believed Commerce should have done that calculation. *Id.* The United States Court of Appeals for the Federal Circuit granted Dillinger's appeal in part, holding that:

> Dillinger's records that Commerce relied on for the cost of non-prime and prime plate were based on "likely selling price" rather than costs of producing and selling the merchandise. Because Dillinger's books and records were based on "likely selling price" rather than cost of production, Commerce erred in relying on them. A remand is required for Commerce to *determine the actual costs of prime and non-prime products.*

*Dillinger France S.A. v. United States*, 981 F.3d 1318, 1324 (Fed. Cir. 2020) (emphasis added). Beyond holding that Commerce "erred in relying on" Dillinger's books and records, the Federal Circuit did not direct any particular manner in which Commerce was to "determine the actual costs of prime and non-prime products." *Id.*

No clarification is needed to understand the plain language of the Federal Circuit's opinion and this Court's subsequent remand order. In the final results, Commerce shifted costs in order to rely on Dillinger's reported books and records, which provided an *average cost* of all prime products instead of the *actual costs* of both non-prime and prime products. *See Certain Carbon and Alloy Steel Cut-To-Length Plate From* France, 82 Fed. Reg. 24,096 (Dep't of Commerce May 25, 2017) and accompanying Issues and Decision Memorandum (IDM) at 59. On remand, Commerce seeks to obtain certain information that it did not request during the initial proceedings – because it intended to rely on Dillinger's books and records – including the physical characteristics and actual cost of production of prime and non-prime material. *See* Remand Quest. at 3-4 (ECF No. 73 at 10-11). While these questions may be complex, they are also the only way Commerce can ascertain "the actual costs of prime and non-prime products" in accordance with the Federal Circuit's directive. *Dillinger*, 981 F.3d at 1324. Importantly, while Dillinger argued that Commerce improperly "reduced the reported costs of Dillinger's non-prime

2

plate by over 40% and transferred this amount to the reported costs of Dillinger's prime plate," the Federal Circuit did *not* order Commerce to rely on the cost of production as reported by Dillinger.  Dillinger App. Br. at 37.

Dillinger asserts that "Commerce accomplished this cost shifting with only a few lines of code in its SAS program, and it is only these lines of code that need to be corrected."  Dillinger Mot. at 3.  But simply shifting those costs back, as Dillinger advocates, would not comport with the holding by the Federal Circuit because Commerce would still be utilizing Dillinger's books and records – adopting the average cost of prime plate as offered by Dillinger – which is precluded by the opinion of the Federal Circuit.  *See Dillinger France*, 918 F.3d at 1324; Dillinger Motion at 3.  Contrary to Dillinger's assertions, the Federal Circuit's order does not permit Commerce to continue to use Dillinger's books and records, nor did that court instruct Commerce to shift costs in the manner advocated by Dillinger; rather, the Federal Circuit found that Commerce "erred" in using Dillinger's books and records, ordering Commerce to determine the "actual costs" of non-prime and prime products to use in its calculations.  *See Dillinger France* at 1324.  And indeed, the Federal Circuit's order is consistent with the substantial evidence standard of review applied by both that Court and this one: the Courts evaluate whether Commerce's exercise of its discretion is in accordance with law and supported by record evidence, rather than direct Commerce to undertake a specific process in reaching its determination.  *Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013).

To determine the "actual" costs of prime and non-prime products, Commerce requires information on CONNUM-specific costs, physical attributes of the products, cost differences attributable to the physical characteristics, and cost of production.  S*ee Remand Redetermination*

*Supplemental Questionnaire* (March 18, 2021).[2]  Despite being asked to provide actual costs information concerning non-prime products in the underlying investigation, Dillinger only provided the weighted average cost of prime products as the cost for all reported non-prime products.  *See* IDM at 59-60.  Because Commerce determined that Dillinger's normal books and records were in accordance with generally accepted accounting principles and, thus, could be used in Commerce's margin calculations, Commerce did not issue additional questionnaires to obtain this information at that time.  *Id.*  However, because Commerce is now barred from relying on Dillinger's books and records, the information necessary to determine Dillinger's *actual costs* of non-prime products is not on the record of Commerce's proceeding.  Thus, to obtain the information needed to determine the actual costs of non-prime plate as instructed by the Federal Circuit, Commerce issued a supplemental questionnaire to Dillinger on March 17, 2021, requesting the necessary information.  *See Remand Redetermination Supplemental Questionnaire* (March 18, 2021).

      Dillinger implies that Commerce should require less information to calculate actual costs because Dillinger believes the difference in its margin will be minor – from 6.15 to 5.91 percent. Dillinger Mot. at 3.  Dillinger notably cites no legal authority for the premise that Commerce should tailor its requests to the dumping margin it expects will result, and indeed doing so would violate Commerce's statutory directive to calculate accurate dumping margins.  19 U.S.C. § 1675.  Moreover, even if Commerce's requests extend beyond the specific holding of the Federal Circuit – which they do not – requests for additional information on remand are well within Commerce's authority, unless expressly precluded by the Court.  *See Laclede Steel Co. v. United States,* 19 C.I.T. 1076, 1078 (1995) ("Any decision to expand the administrative record upon

---

[2] The Remand Redetermination Supplemental Questionnaire is attached to plaintiff's motion.

remand is well within Commerce's discretion, absent express language from the court barring such action."); *see also NTN Bearing Corp. of Am. v. United States,* 132 F. Supp. 2d 1102, 1107 (Ct. Int'l Trade 2001) (explaining that as long as the Court does not forbid Commerce from considering new information on remand, it remains within Commerce's discretion to request and evaluate new data).

Further, Dillinger's argument that the questionnaire causes "needless and undue hardship" to Dillinger is unfounded. Dillinger Mot. at 5. The burden of litigation is well-known to parties, especially here, where Dillinger prevailed on the appealed-upon issue, necessitating a remand to the agency for further action. Moreover, it is reasonable exercise of Commerce's authority to request additional information on remand, regardless of how much time has passed. *See Ta Chen Stainless Steel Pipe, Inc. v. United States,* 298 F.3d 1330, 1336 (Fed. Cir. 2002) (holding that it is reasonable for Commerce to request information relevant to several-year old litigation because the company was on notice to preserve its records in the event that Commerce would request them). As in *Ta Chen*, Dillinger reasonably should have retained and have access to any relevant records that may be requested by Commerce until litigation is conclusively finalized. *Id.* In fact, Dillinger does not assert that it does not possess this information, but instead simply argues that providing it would be burdensome. Dillinger Mot. at 5.

Here, Dillinger has prosecuted this appeal concerning the actual costs of prime and non-prime product since 2017. It successfully appealed the issue that is now before Commerce on remand. Commerce explained in its questionnaire why it needed the information; Dillinger's request for this Court to require Commerce to explain again why the information is necessary is unfounded. *See Remand Redetermination Supplemental Questionnaire* at 3-4.[3] The fact that

---

[3] A copy of the questionnaire is attached to Dillinger's motion. *See* ECF No. 74.

5

Dillinger prevailed on appeal does not absolve it from responding to Commerce's questionnaire, which is designed to obtain precisely the information necessary to comply with the remand order.

Moreover, because Commerce's requests are firmly within the parameters of the Federal Circuit's order, Dillinger's request amounts to a premature invitation for this Court to review ongoing administrative proceedings. This Court's role is not to referee disputes concerning Commerce's conduct of its remand proceedings. Remand proceedings[4] are administrative proceedings conducted under Commerce's authority as an Executive Branch agency upon order of the Court. *See Fengchi Imp. & Exp. Co. v. United States,* 98 F. Supp. 3d 1309, 1315 (Ct. Int'l Trade 2015) ("The remand proceeding is an administrative proceeding."); *see also Venus Wire Indus. Pvt. v. United States,* 471 F. Supp. 3d 1289 (Ct. Int'l Trade 2020) (explaining that Commerce's additional explanation in the remand proceeding is not *post hoc* rationalization because the remand proceeding is an administrative proceeding). "The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction." *Nippon Steel Corp. v. United States*, 219 F.3d 1348, 1353 (Fed. Cir. 2000) (citing *McKart v. United States*, 395 185, 194 (1969)). If and when a party disagrees with Commerce's remand determination, it may object to the remand results by filing comments with this Court. RCIT 56.2(h). This is standard practice for parties involved in remand proceedings, and the requirement that a party must first exhaust its administrative remedies applies equally to remand proceedings as it does to final determinations and final results of review. *See, e.g., United States Steel Corp. v. United States*, 348 F. Supp. 3d 1248, 1260 (Ct. Int'l Trade 2018) (stating that parties should have the opportunity to submit comments on the remand redetermination so that

---

[4] Pursuant to 19 U.S.C. 1516a(c)(3), a remand is a segment of an administrative proceeding.

6

parties may exhaust their administrative remedies); *Ceramark Tech., Inc. v. United States*, 61 F. Supp. 3d 1371, 1374 (Ct. Int'l Trade 2015) (applying exhaustion requirement to an importer that failed to submit comments on remand redetermination). Indeed, the same standard of review is applied by this Court to remand determinations as is applied to final determinations and final results of review. *Id.*

## CONCLUSION

Dillinger's motion ignores the Federal Circuit's holding – that Commerce may not use Dillinger's books and records – and ignores Commerce's authority to conduct its remand proceeding. For these reasons, we respectfully request this Court to deny plaintiff's motion for clarification of the scope of this remand.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | BRIAN M. BOYNTON<br>Acting Assistant Attorney General |
|  | JEANNE E. DAVIDSON<br>Director |
|  | /s/ Tara K. Hogan.<br>TARA K. HOGAN<br>Assistant Director |
| OF COUNSEL:<br><br>AYAT MUJAIS<br>Office of the Chief Counsel for<br>Trade Enforcement & Compliance<br>Department of Commerce | /s/ Kelly A. Krystyniak<br>KELLY A. KRYSTYNIAK<br>Trial Counsel<br>U.S. Department of Justice, Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Telephone: (202) 307-0163<br>Facsimile: (202) 514-8640<br>E-mail: Kelly.A.Krystyniak@usdoj.gov |
| April 15, 2021 | Attorneys for Defendant |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 1998 words.

s/ Kelly A. Krystyniak

April 15, 2021