# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| DILLINGER FRANCE, S.A., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 17-00159 |
| UNITED STATES, | ) |
| Defendant. | ) |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments filed by Plaintiff Dillinger France, S.A. (Dillinger France). *See* Dillinger France Cmts., September 24, 2021 (ECF No. 89). These comments and our response concern the Department of Commerce's (Commerce) remand redetermination, *see Final Results of Remand Pursuant to Court Remand*, August 25, 2021 (Remand Redetermination) (ECF No. 85) (P.R.R. 20),[1] issued by Commerce pursuant to this Court's opinion and remand order, *Dillinger France S.A. v. United States*, Order (Ct. Int'l Trade 2021) (CIT Remand Order) (ECF No. 73). As explained below, the Court should sustain the Remand Redetermination and enter final judgment for the United States because Commerce has complied with the opinion by the United States Court of Appeals for the Federal Circuit Opinion, and because the Remand Redetermination is supported by substantial evidence and otherwise in accordance with law.

---

[1] Citations to the public record (P.R.R.) and confidential record (C.R.R.) refer to the record of the antidumping duty administrative redetermination.

1

# ARGUMENT

## I.  Background

In the underlying investigation, Dillinger France explained that, while it valued non-prime merchandise at the estimated likely selling price in its normal books and records, for the purpose of reporting costs to Commerce, it revalued all non-prime plates to reflect the average cost of production for all prime plates produced.  IDM at 59.  Based on this, in its Final Determination, Commerce adjusted the reported costs for non-prime products to reflect the cost recorded in Dillinger's normal books and records (based on estimated sales values) and then allocated the excess costs allocated to non-prime products (*i.e.*, the difference between the reported and adjusted costs for non-prime products) to the cost of production for prime products. *See Certain Carbon and Alloy Steel Cut-to-Length Plate from France*, 82 Fed. Reg. 16363 (April 4, 2017) and accompanying IDM.

On December 18, 2017, Dillinger France filed a motion for judgment on the agency record, challenging certain aspects of Commerce's Final Determination.  ECF 27, 28.  Dillinger France argued that Commerce's reliance on Dillinger France's books and records was improper because the books and records were not based on the costs associated with the production of its products.  *See Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020).  The Court affirmed Commerce's decision to adjust the reported costs.  *See Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1375 (Ct. Int'l Trade 2018).  On September 13, 2019, Dillinger France appealed this issue to the Court of Appeals for the Federal Circuit.

On December 3, 2020, the Federal Circuit held that Commerce erred when it relied on Dillinger France's books and records to determine the cost of prime and non-prime steel.  It remanded this issue for Commerce to determine the actual costs of prime and non-prime plate.

*See* Federal Circuit Opinion and Remand Order at 9.  This Court remanded the case to Commerce with instructions to reconsider Dillinger France's costs in accordance with the opinion of the Federal Circuit.  Pursuant to those orders, Commerce reopened the record and issued a supplemental questionnaire to Dillinger France on March 17, 2021 to obtain the physical characteristics of the non-prime products produced and the actual cost of producing the non-prime products.  See Commerce's Letter, "Supplemental Questionnaire to Dillinger France S.A.," dated March 17, 2021 (Remand Supplemental) (P.R. 9).  In this supplemental questionnaire, Commerce specifically explained that it was not appropriate to rely on the overall average cost of producing all prime products as a surrogate for the actual costs of producing the specific non-prime products produced, and therefore needed the actual product-specific cost of production of the non-prime products.  *Id.*

On June 23, 2021, Dillinger France submitted its response to the supplemental questionnaire, but did not provide the physical characteristics of non-prime products nor the actual product-specific costs of production for non-prime products, as requested.  *See generally* Response from Dillinger, dated June 23, 2021 (P.R. 16).  Therefore, Commerce applied facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1) and relied on the total cost of production for both prime and non-prime products as recorded in Dillinger France's normal books and records to comply with the Federal Circuit and CIT orders.

**II.    Standard Of Review**

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law."  *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).  "Substantial evidence"

3

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).  Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion.  *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

### III. The Court Should Sustain Commerce's Redetermination

Commerce complied with the Federal Circuit's this Court's remand orders, supported the Remand Redetermination with record evidence, and acted in accordance with law.  Therefore, this Court should sustain the Remand Redetermination.

#### A. Commerce's Redetermination Adheres With The Remand Orders

The Court should sustain Commerce's Remand Redetermination because it complies with both Court's orders.  First, Commerce used information from the investigation to calculate the actual cost of production for prime products.  Second, in response to the Federal Circuit's remand order and the CIT Remand Order, Commerce sent out a supplemental questionnaire to Dillinger France to obtain the actual product-specific cost information for non-prime products to determine the actual cost of production, as directed by the Federal Circuit.  The supplemental questionnaire explained that it was inappropriate to rely on the *overall* average cost of producing all prime products as a surrogate for the *actual* cost of producing the specific non-prime products produced.  *See generally* Remand Supplemental.  Notwithstanding this, Dillinger France did not provide the information in its supplemental questionnaire response necessary to calculate the

*actual* costs of production for non-prime products, instead insisting that the estimated allocation it provided in the original investigation should be used because it was unable to provide the actual, product-specific costs. *See* Remand Redetermination at 6. Because Dillinger France failed to provide actual, product-specific costs in response to Commerce's request, Commerce applied facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1) and relied on the total cost of production for both prime and non-prime merchandise as recorded in Dillinger's normal books and records to comply with the Court's order to determine actual cost of production. *Id.*

Commerce's application of facts otherwise available was in accordance with law. The Federal Circuit directed Commerce to "determine the actual costs of prime and non-prime products." Opinion at 9. Further, the Federal Circuit has recognized that Commerce's requiring costs to reflect cost differences attributable to physical characteristics ensures that product-specific costs reflect the actual costs to produce specific products. *See Hyundai Elec. & Energy Sys. Co. v. United States*, 15 F.4th 1078 (Fed. Cir. 2021) (affirming determination to apply facts otherwise available where importer failed to produce actual, product-specific costs in response to Commerce's questionnaire). Thus, Commerce required the physical characteristics of non-prime products to determine the actual costs of non-prime products. Dillinger's failure to submit the physical characteristics or product-specific actual cost information as requested by Commerce precluded Commerce from doing so and necessitated the use of facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1). *Remand Redetermination* at 11.

Specifically, to determine the actual costs as directed by the Federal Circuit, Commerce used record information: the cost assigned to the prime and non-prime merchandise as recorded in Dillinger France's normal books and records, *i.e.,* the cost assigned to the non-prime merchandise is based on Dillinger France's estimated selling price of the non-prime products, as

facts otherwise available. *Remand Redetermination* at 11. Commerce selected the estimated selling prices of the non-prime products as facts otherwise available because this amount is used by Dillinger France in its normal books and records; importantly, was verified by Commerce; and is appropriate information available on the record. *Id.*

Dillinger France argues that Commerce ignored the directive of the Federal Circuit because Commerce continued to rely on the "likely selling prices" in Dillinger France's books and records rather than the actual cost of production. Dillinger France Cmts. at 1. Dillinger France further argues that continuing to use its books and records as facts otherwise available was incorrect because Dillinger France "properly reported the total actual costs of non-prime plate" and reported the product characteristics and costs of non-prime plate to the best of its ability. Dillinger France Cmts. at 3-5. However, as discussed above Dillinger France failed to submit either the actual product-specific costs of producing the non-prime products or the physical characteristics of the non-prime products, and Commerce did not have the information that is necessary to calculate the actual costs of prime and non-prime products.

The Federal Circuit has recognized Commerce's obligation to ensure that the reported costs of production reasonably reflect the cost of producing the merchandise, and affirmed Commerce's determination to rely on facts otherwise available, even where the importer asserts that it does not possess the required information. *Hyundai Elec. & Energy Sys. Co*. 15 F.4th 1078. Here, Commerce sought to analyze information pertaining to the cost of producing the merchandise under consideration on both an aggregate and product-specific basis. Remand Redetermina*ti*o*n* at 13. This was in accordance with the opinion of the Federal Circuit, which specifically ordered a remand requiring Commerce to "determine the *actual* costs of prime and non-prime products." Opinion at 9 (emphasis added).

Importantly, though Dillinger France argued to the Federal Circuit that the allocation it provided was sufficient, the Federal Circuit did not order Commerce to rely on that allocation, nor did it imply that the allocation should have been sufficient for Commerce's needs. *Sfee* Dillinger France Federal Circuit Br. at 35-36, CAFC ECF No. 36. Given the combination of the Federal Circuit's directive, Commerce's long-standing judicially approved practice of analyzing costs on a CONNUM-specific basis, and record evidence, it is perplexing that Dillinger France asserts that it properly reported the total actual costs of non-prime products (when the record clearly indicates it did not), or that Commerce's application of facts otherwise available was unnecessary.

If Dillinger France had wanted to present evidence of the specific non-prime products produced, it could have relied on production reports or finished goods inventory excerpts to show which production runs resulted in the production of non-prime plates. *Remand Redetermination* at 19. Dillinger France chose not to do so. Thus, because Dillinger France did not report the actual product-specific costs of producing non-prime products and, because Commerce verified the total costs of producing all products during the period of investigation, Commerce reasonably relied on the allocation of costs between prime and non-prime products recorded in Dillinger France's normal books and records as facts otherwise available.

Dillinger France incorrectly asserts that relying on this data was "prohibited" by the Federal Circuit. Remand Cmts. at 4. To the contrary, the Federal Circuit directed Commerce to analyze the "actual" costs of production, and Commerce issued a questionnaire to receive that information. Dillinger France did not provide the requested information, and, as a result, Commerce resorted to facts otherwise available, selecting information to fill the gap in the record. Although Commerce recognized that the use of the non-prime cost information recorded

in Dillinger's normal books and records (*i.e.*, the estimated sales prices) did not vary by CONNUM and did not reflect cost differences attributable to the physical characteristics, this information was preferrable because it is based on the actual costs Dillinger France assigns to the non-prime products in its normal books and records. Consequently, in this circumstance, using costs from Dillinger France's normal books and records as facts otherwise available to calculate the actual cost of non-prime products was reasonable and complies with the Federal Circuit's instructions.

### B.  Commerce's Redetermination Is In Accordance with Law

The Court should sustain Commerce's Remand Redetermination because it is in accordance with law. Dillinger France argues that Commerce misapplied the facts otherwise available provision because Dillinger France notified Commerce of its difficulties in reporting all of the physical characteristics, suggested an alternative pursuant to 19 U.S.C. § 1677m(c), and no party challenged this alternative. Dillinger France Cmts. at 3, 7. Further, Dillinger France argues that Commerce applied an adverse inference in its facts otherwise available determination. Dillinger France Cmts. at 8. Finally, Dillinger France argues that the missing information from the record does not affect the margin.

First, Commerce relied on facts otherwise available, but did *not* apply an adverse inference, and because Dillinger France did not argue that Commerce applied an adverse inference during the remand proceeding, it cannot now do so before this Court. *See generally* Dillinger Comments on Draft Remand; 28 U.S.C. § 2637(d); *Boomerang Tube, LLC, TMK IP-SCO v. United States*, 856 F.3d 908, 912-13 (Fed. Cir. 2017.

Commerce lawfully applied facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1). Section 1677e(a)(1) of Title 19 requires that necessary information is missing from

8

the record, and as discussed above, Commerce reasonably concluded that it did not have the required information necessary to determine the actual cost of production of non-prime products. Thus, Commerce properly applied 19 U.S.C. § 1677e(a)(1) and selected from facts otherwise available on the record to determine the actual cost of non-prime products as directed by the Federal Circuit.

Commerce did not apply an adverse inference, but rather relied on the other information available to it. Dillinger France's disagreement with the information used as facts otherwise available does not transform Commerce's application of facts otherwise available into an adverse inference. As discussed above, Commerce reasonably selected among available information to fill the gap in the record. As Commerce explained in the remand redetermination, Dillinger France's suggested method – using the overall average cost of producing prime plate products – is not a reliable basis for calculating an accurate weighted average dumping margin because it assigns the same costs to products with varying physical characteristics even though there is a wide disparity in the reported actual total cost of manufacturing amounts for prime products. Remand Redetermination at 19. Thus, Commerce's application of facts otherwise available pursuant to 19 U.S.C. § 1677e(a)(1) is in accordance with law.

Dillinger France's argument that 19 U.S.C. § 1677m(c) requires that Commerce depart from its long-standing, judicially approved practice of analyzing costs on a CONNUM-specific basis because Dillinger France cannot provide the necessary information is misplaced. Dillinger France Cmts. at 7. As discussed above, it is appropriate to use as facts availablethe allocation of costs between prime and non-prime products recorded in Dillinger France's normal books and records; Commerce reasonably concluded that the overall average cost of producing prime plate is not appropriate information to use as facts otherwise available because that proposed

9

methodology assigns the same costs to products with varying physical characteristics. *Remand Redetermination* at 18-19.

Further, Dillinger France's assertion that this overall average cost satisfies the requirement of 19 U.S.C. § 1677m(c) as to not require the use of facts otherwise available is incorrect. 19 U.S.C. § 1677m(c) provides that:

> Commerce shall not decline to consider submitted information if all of the following requirements are met: (1) the information is submitted by the established deadline; (2) the information can be verified; (3) *the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination;* (4) the interested party demonstrated that it acted to the best of its ability; and (5) the information can be used without undue difficulties.

19 U.S.C. § 1677m(c) (emphasis added). In this case, the overall average cost method that Dillinger France advocates cannot serve as a reliable basis for calculating an accurate weighted-average dumping margin because there is a wide disparity in the reported actual total cost of manufacturing amounts for prime products. *Remand Redetermination* at 19. Thus, the requirements of 19 U.S.C. § 1677m(c) were not met and a resort to facts otherwise available was necessary and in accordance with law.

Dillinger France's argument that the costs and physical characteristics of non-prime products, *i.e.*, the missing information on the record, have no impact on the margin calculation is also flawed. Dillinger France Cmts. at 9. It is a *non sequitur* to state that "the only issue related to nonprime merchandise that was challenged in this case was Commerce's shifting of reported costs from non-prime to prime merchandise" and then argue that the issue has no impact on the margin calculation. *Remand Redetermination* at 16. Because the shifting of costs from prime to non-prime products has a direct effect on the costs of both product groups, it directly affects the results of the sales-below-cost test and calculation of constructed value profit regardless of

whether non-prime products were sold in the United States.  *Id.*  Indeed, the fact that the weighted-average dumping margin changes as a result of the allocation of costs between prime and non-prime products demonstrates that there is an impact on the calculated weighted-average dumping margin, and it also illustrates why ensuring the accurate reporting of product-specific production costs is an essential step in Commerce's obligation to ensure that the reported costs reasonably reflect the cost of producing the merchandise under consideration, as directed by the Federal Circuit.

Finally, Dillinger France's argument that Commerce should accept its alternative suggestion of using the overall average costs as a surrogate for the actual costs of non-prime products because no party challenged Dillinger France's reporting of physical characteristics or reported costs of non-prime products is meritless.  Dillinger France Cmts. at 3.  Although it is true no interested parties challenged Dillinger France's reporting of the cost of production of non-prime products, Commerce had identified a problem in the *Preliminary Determination,* and indeed the petitioner explicitly argued in its case brief that Commerce should continue this adjustment in the *Final Determination*.  *Remand Redetermination* at 15.  Dillinger France's claim that Commerce's use of Dillinger France's reported costs of non-prime product as the starting point in its calculation of the adjustment equates to an implicit acceptance of those costs as incorrect, especially in light of the Federal Circuit's directive.  *Id.*  As discussed above, the accurate reporting of the physical characteristics of non-prime products is now necessary to comply with the Federal Circuit's directive.  Thus, Dillinger France's alternative method is not

appropriate here, and its inability to supply the necessary information for Commerce to make its determination reasonably required the use of facts otherwise available.[2]

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's *Remand Redetermination* and enter final judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Tara K. Hogan.
TARA K. HOGAN
Assistant Director

OF COUNSEL:

AYAT MUJAIS
Office of the Chief Counsel for
Trade Enforcement & Compliance
Department of Commerce

/s/ Kelly A. Krystyniak
KELLY A. KRYSTYNIAK
Trial Counsel
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-0163
Facsimile: (202) 514-8640
E-mail: Kelly.A.Krystyniak@usdoj.gov

November 8, 2021

Attorneys for Defendant

---

[2] In the same vein, Dillinger France's assertion that Commerce "has waived the ability" not to rely on the allocation as proffered by Dillinger France by not finding flaw with it in the underlying investigation misses the mark. Commerce changed its approach based on a mandate from the Federal Circuit, and, when Dillinger France failed to provide the information requested during the remand, Commerce relied on facts otherwise available. Commerce was within its authority to do so. *See Evonik Rexim (Nanning) Pharm Co. Ltd. v. United States*, 296 F. Supp. 3d 1364, 1367 (Ct. Int'l Trade 2018).

Case 1:17-cv-00159-GSK   Document 96   Filed 11/08/21   Page 13 of 13

13

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 3,431 words.

s/ Kelly A. Krystyniak

November 8, 2021