NON-CONFIDENTIAL VERSION

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DILLINGER FRANCE S.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION, *et al.*, <br><br> Defendant-Intervenors. | Before: Hon. Gary S. Katzmann <br>           Judge <br><br> Court No. 17-00159 <br><br> <u>NON-CONFIDENTIAL VERSION</u> <br><br> Business Proprietary Information Removed from Page 4 |

**DEFENDANT-INTERVENOR NUCOR CORPORATION'S
COMMENTS ON FINAL RESULTS OF REDETERMINATION PURSUANT
TO COURT REMAND**

Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: November 8, 2021

Court No. 17-00159                                                      NON-CONFIDENTIAL VERSION

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II. ARGUMENT................................................................................................................1

    A.    Commerce's Determination Is Consistent with the U.S. Court of Appeals for the Federal Circuit Opinion.........................................................1

    B.    Commerce's Determination that Information Is Missing from the Record Is Supported by Substantial Evidence and Otherwise in Accordance with Law ...............................................................................3

    C.    Commerce's Reliance on Facts Available Is Supported by Substantial Evidence and Otherwise in Accordance with Law ................5

III. CONCLUSION.............................................................................................................8

Court No. 17-00159                                                                           NON-CONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dillinger France S.A. v. United States*,
    981 F.3d 1318 (Fed. Cir. 2020)......................................................................................1, 2, 3

*World Finer Foods, Inc. v. United States*,
    24 CIT 541 (2000) ..................................................................................................................7

**Statutes**

19 U.S.C. § 1677e(a).................................................................................................................5, 6

19 U.S.C. § 1677e(a)(1)..................................................................................................................7

19 U.S.C. § 1677e(a)(2)(B)............................................................................................................7

19 U.S.C. § 1677e(b) .....................................................................................................................6

19 U.S.C. § 1677m(e) ....................................................................................................................7

19 U.S.C. § 1677m(e)(3)................................................................................................................7

Court No. 17-00159                                                                               NON-CONFIDENTIAL VERSION

I.  **INTRODUCTION**

On behalf of Defendant-Intervenor Nucor Corporation ("Nucor"), we respectfully submit the following comments in support of the August 25, 2021 remand results issued by the Department of Commerce ("Commerce"). Final Results of Redetermination Pursuant to Ct. Remand Order in *Dillinger France S.A., v. United States*, Ct. No. 17-00159 (Aug. 25, 2021), ECF No. 85 ("Remand Results"). For the reasons discussed below, Nucor respectfully requests that this Court sustain Commerce's remand determination and reject the arguments raised by Plaintiff Dillinger France S.A. ("Dillinger"). *See* Pls.' Comments in Opp'n to the Final Results of Redetermination (Sept. 24, 2021), ECF No. 89 ("Dillinger Comments").

II.  **ARGUMENT**

    A.  **Commerce's Determination Is Consistent with the U.S. Court of Appeals for the Federal Circuit's Opinion**

In its opinion, the U.S. Court of Appeals for the Federal Circuit ("CAFC") explained that, although Dillinger's records were kept in accordance with generally accepted accounting principles, they represented the likely selling price of non-prime merchandise, rather than those costs of actually producing the merchandise. *Dillinger France S.A. v. United States*, 981 F.3d 1318, 1324 (Fed. Cir. 2020). Thus, the Court found that "{a} remand is required for Commerce to determine the actual costs of prime and non-prime products." *Id.* Following this directive, Commerce explained that, during the underlying investigation, Dillinger did not provide information allowing for the calculation of the actual cost of producing non-prime merchandise, as Dillinger did not provide either actual, product-specific costs or the physical characteristics of non-prime merchandise. Remand Results at 2-3. Accordingly, on remand, Commerce issued Dillinger a supplemental questionnaire, requesting that Dillinger provide the necessary information to determine its cost of producing non-prime plates, consistent with the CAFC's

1

opinion. *Id.* at 3-4. In its supplemental questionnaire response, Dillinger indicated that it was not able to identify all of the physical characteristics of non-prime products or report actual product-specific costs for such merchandise. *Id.* at 4-5. Because this information was missing from the record, Commerce determined that it was necessary to rely on facts available to determine the actual cost of production of non-prime products and, as facts available, relied on "the estimated selling prices of the non-prime products . . . because this amount is used by Dillinger in its normal books and records . . . ." *Id.* at 6, 9, 11.

In challenging Commerce's determination, Dillinger asserts that Commerce's remand redetermination is inconsistent with the CACF's opinion. Dillinger Comments at 1-2. In doing so, Dillinger points to the Court's statement that, "{b}ecause Dillinger's books and records were based on 'likely selling price' rather than cost of production, Commerce erred in relying on them{,}" *Dillinger*, 981 F.3d at 1324 (citation omitted), and claims that Commerce made no change in its determination on remand. Dillinger Comments at 1.

This argument ignores the substance of Commerce's determination. The CAFC remanded for Commerce to "determine the actual costs of prime and non-prime products." *Dillinger*, 981 F.3d at 1324. Commerce sought to do so by issuing a supplemental questionnaire to Dillinger requesting such information. *See* Remand Results at 3. Dillinger was unable to provide the information requested in Commerce's supplemental questionnaire. *Id.* at 4-5. Consequently, Commerce determined that necessary information to calculate Dillinger's actual cost of producing non-prime plates was missing from the record and, accordingly, that it was necessary to rely on facts available. *Id.* at 2-5.

This approach is consistent with the CAFC's opinion. Commerce sought to obtain Dillinger's actual costs of prime and non-prime products through the issuance of a supplemental

questionnaire to Dillinger, but Dillinger was unable to provide this necessary information. *Id.* at 6-9. Commerce also fully explained why the information that Dillinger had provided did not constitute the actual costs of production. *Id.* Specifically, Commerce explained that Dillinger had reported costs for non-prime merchandise based on the average total cost of producing all plate, as opposed to product-specific costs, and "{t}he use of an 'average cost' would not, by definition, comply with the {CAFC's} order to determine the 'actual costs of prime and non-prime products' because it assigns the same cost to products with varying physical characteristics." *Id.* at 7 (quoting *Dillinger*, 981 F.3d at 1321). In other words, Commerce took action to obtain Dillinger's actual cost of producing non-prime merchandise, as directed by the CAFC, but this information was not provided. Given the absence of this information, Commerce appropriately adjusted its original determination to be based on facts available. Dillinger has provided no compelling reason as to why Commerce's reliance on facts available here was inconsistent with the CAFC's opinion.

**B.   Commerce's Determination that Information Is Missing from the Record Is Supported by Substantial Evidence and Otherwise in Accordance with Law**

In its remand determination, Commerce correctly found that necessary information was missing from the record. Remand Results at 6-7. In particular, Dillinger did not submit the actual, product-specific cost of producing non-prime products, and, in the absence of such data, the agency was not able to determine the actual cost of production for prime and non-prime products. *Id.* Dillinger faults this determination based on the assertion that it properly reported the actual cost of prime plate and the total actual cost of non-prime plate. Dillinger Comments at 2-4. This is incorrect. As Commerce explained, Dillinger did not provide all of the relevant physical characteristics for its non-prime plate. Remand Results at 6-7. Dillinger acknowledged that the non-prime plate produced can vary in characteristics such as size, specification, and

3

grade. *See id.* at 8. As these characteristics would be associated with variations in costs, the absence of this information necessarily means that it is not possible to identify the actual costs of the non-prime plate produced. *Id.* at 8-9.

Notably, Dillinger does not claim that it reported the actual, product-specific costs of producing non-prime plate. Instead, Dillinger asserts only that it was able to report the *total* actual cost of producing non-prime plate. *See* Dillinger Comments at 3-4. But this is equally unavailing and does not address the gap in the record identified by Commerce. Without the ability to identify all of the relevant characteristics, and therefore the actual costs, of the non-prime plate produced, it is not possible to identify the total cost of producing such products. This is evident from Dillinger's explanation of its calculation of the total cost for producing non-prime plate. Specifically, Dillinger stated that it simply:

> {A}llocated a portion of its total actual production costs to non-prime plate based upon the specific yield rate for each of the two plate groups {(*i.e.*, regular plate and line-pipe plate)}. The yield rates were very specific, rounded to the fourth decimal place, and resulted in [     ] Euros of Dillinger's total actual cost of production being allocated to non-prime plate. This corresponds to an actual cost for non-prime plate of [     ] Euro/ton.

*Id.* at 3. Importantly, this allocation methodology resulted in Dillinger presuming that all non-prime plate had the same cost of production, equal to an average cost based on the total cost of production allocated to non-prime merchandise. *See id.* Yet, as Commerce recognized, there is a "wide disparity in the reported actual total cost of manufacturing" for prime plate, making it necessarily distortive to rely on the average cost of all products. Remand Results at 7-8. Moreover, "{t}he use of an 'average cost' would not, by definition, comply with the Federal Circuit's order to determine the 'actual costs of prime and non-prime products.'" *Id.* at 7.

Furthermore, Dillinger's inability to report the actual cost of its non-prime plate necessarily means that it also failed to report the actual cost of its prime plate. In discussing how

4

it reported the cost of prime plate, Dillinger explained that, after calculating costs for its two groups of plate (*i.e.*, regular plate and line-pipe plate), it "allocated a portion of the actual cost of each group to non-prime plate based upon the specific yield rate for each group{,}" with the remaining costs allocated to prime plate. Dillinger Comments at 2. However, because Dillinger is unable to identify the actual costs of producing non-prime plate, it cannot accurately allocate costs between prime and non-prime merchandise. This necessarily affects the accuracy of the costs reported for both non-prime and prime plate. As Commerce explained:

> Because Dillinger treats the costs of non-prime products as an offset to prime product costs in its normal books and records, absent the reporting of the actual product-specific costs of production for the non-prime products, any adjustment to the costs assigned to non-prime product costs necessarily affects the costs assigned to prime products.

Remand Results at 20. Thus, Dillinger is incorrect in its assertion that the missing information does not affect, and cannot result in a change to, the costs reported for prime products. Dillinger Comments at 9-10. As such, Commerce's determination that necessary information was missing is fully consistent with the information on the record, and Dillinger's arguments to the contrary should be rejected.

### C. Commerce's Reliance on Facts Available Is Supported by Substantial Evidence and Otherwise in Accordance with Law

Pursuant to 19 U.S.C. § 1677e(a), where necessary information is not available, Commerce will rely on facts otherwise available to fill the gap in the record. *See* Remand Results at 10-11. Here, as discussed above, Commerce properly found that necessary information regarding Dillinger's reported cost of production was missing from the record. Accordingly, Commerce followed it statutory directive to turn to other facts on the record to fill the gap. *Id.* To do so, Commerce relied on the costs assigned to prime and non-prime merchandise per Dillinger's books and records, as these are the amounts used by Dillinger in its normal course

and was verified by the agency. *Id.* at 11. In its comments on the remand redetermination, Dillinger make various claims that Commerce has erred in its application of the facts available provisions. Dillinger Comments at 4-9. These arguments should be rejected.

First, Dillinger asserts that it has cooperated to the best of its ability in reporting product characteristics and costs for non-prime merchandise. Dillinger Comments at 4-6, 8-9. This, however, is moot. Commerce made no finding that Dillinger did not cooperate to the best of its ability nor was it required to. Under the statute, Commerce "shall" use facts otherwise available where, *inter alia*, necessary information is not on the record. 19 U.S.C. § 1677e(a). While the level of cooperation is relevant in determining whether an adverse inference should be applied in selecting from among facts available, no such inference was used here. *See id.* § 1677e(b).

Dillinger next states that Commerce did not identify any issues with its reporting in the underlying investigation and thus cannot now claim that information is missing from the record. Dillinger Comments at 5-6. This is incorrect. As the agency explained:

> Commerce identified a problem with Dillinger's reported costs of non-prime products in the *Preliminary Determination* and the petitioner explicitly argued that Commerce should continue to adjust Dillinger's reported costs for the final determination. In other words, both Commerce and the domestic industry identified a problem with Dillinger's reported costs of non-prime products.

Remand Results at 20 (citation omitted). Further, contrary to Dillinger's claims otherwise, *see* Dillinger Comments at 5, there have been change since the underlying investigation that support the application of facts available here: the decision by the CAFC and Commerce's issuance of, and Dillinger's response to, a supplemental questionnaire.

Dillinger also asserts that Commerce's determination is inconsistent with 19 U.S.C. § 1677m(c), claiming that Commerce was required to consider its ability to provide the information in the form requested. *Id.* at 7. This argument is meritless, as Dillinger fails to

6

explain how Commerce's determination was inconsistent with this provision. For example, Commerce is required to consider a party's ability to provide requested information when determining whether that party failed to provide information by the required deadline or in the form and manner requested for the purpose of applying facts available. 19 U.S.C. § 1677e(a)(2)(B). Commerce, however, did not apply facts available on that basis, but instead because necessary information was missing from the record. *See* Remand Results at 6-7. Commerce's ability to apply facts available in such a circumstance is not constrained by 19 U.S.C. § 1677m(c). *Compare* 19 U.S.C. § 1677e(a)(1), *with id.* § 1677e(a)(2)(B). Similarly, Dillinger's reliance on the Court's decision in *World Finer Foods* is inapposite, *see* Dillinger Comments at 7, as that case addressed the application of adverse facts available. *World Finer Foods, Inc. v. United States*, 24 CIT 541, 543 (2000).

Finally, Dillinger's claim that Commerce's determination runs afoul of 19 U.S.C. § 1677m(e) is likewise unavailing. Dillinger Comments at 8. Pursuant to this provision, Commerce "shall not decline to consider" necessary information where certain factors are met. 19 U.S.C. § 1677m(e). As Commerce, explained, however, Dillinger's information did not meet all of the necessary requirements for this provision to apply. Remand Results at 18-19. Specifically, Commerce found that Dillinger's reported cost information could not serve as a reliable basis for calculating cost "because it assigns the same costs to products with varying physical characteristics even though there is, in fact, a wide disparity in the reported actual total cost of manufacturing amounts for prime products." Remand Results at 19; *see* 19 U.S.C. § 1677m(e)(3). Notably, Dillinger fails to counter this finding in any meaningful way, simply asserting that this information "is a reliable basis for reaching the final determination" without addressing Commerce's concerns. Dillinger Comments at 8.

In short, Commerce properly found that necessary information was missing from the record and explained why it could not use the cost information Dillinger had reported. Consequently, Commerce appropriately resorted to facts available. Further, Commerce explained why it considered the information it relied upon as facts available to be the best information on the record. While Dillinger may disagree with Commerce's determination, it has failed to demonstrate that this determination is unsupported by substantial evidence or otherwise not in accordance with law. As such, Dillinger's arguments that Commerce misapplied the facts available provision should be rejected.

### III.     CONCLUSION

For the reasons contained herein, Nucor respectfully requests that the Court sustain Commerce's remand determination as supported by substantial evidence and otherwise in accordance with law.

Respectfully submitted,

*/s/ Alan H. Price*
Alan H. Price, Esq.
Christopher B. Weld, Esq.
Stephanie M. Bell, Esq.

**WILEY REIN LLP**
1776 K Street, NW
Washington, DC 20006
(202) 719-7000

*Counsel to Nucor Corporation*

Dated: November 8, 2021

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that these comments complies with the word limitation requirement. The word count for Defendant-Intervenor Nucor Corporation's Comments on Final Results of Redetermination Pursuant to Court Remand, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 2,353 words.

*/s/ Alan H. Price*
(Signature of Attorney)

Alan H. Price
(Name of Attorney)

Nucor Corporation
(Representative Of)

November 8, 2021
(Date)