## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| DILLINGER FRANCE S.A.,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>SSAB ENTERPRISES LLC, *et. al.*,<br><br>    Defendant-Intervenors. | Court No. 17-00159 |

### **DEFENDANT'S REPLY TO COMMENTS ON REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this reply to the comments filed by Plaintiff Dillinger France, S.A. (Dillinger France). *See* Dillinger France Cmts., December 16, 2022 (ECF Nos. 122, 123). Those comments and our reply concern the Department of Commerce's (Commerce) third remand redetermination, *see Final Results of Remand Pursuant to Court Remand*, November 16, 2022 (Remand Redetermination) (ECF No. 120) (P.R.R. 4),[1] issued pursuant to this Court's opinion and remand order, *Dillinger France S.A. v. United States*, 589 F. Supp. 3d 1252 (Ct. Int'l Trade 2022) *(Remand Order)* (ECF No. 118, 119). As explained below, the Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has complied with the remand order and because the remand redetermination is supported by substantial evidence and otherwise in accordance with law.

---

[1] Citations to the public record (P.R.R.) and confidential record (C.R.R.) refer to the record of the antidumping duty administrative redetermination.

1

**ARGUMENT**

I.  **Background**

In the underlying investigation, Dillinger France explained that, while it valued non-prime merchandise at the estimated likely selling price in its normal books and records, for the purpose of reporting costs to Commerce, it revalued all non-prime plates to reflect the average cost of production for all prime plates produced. Therefore, for the final determination, Commerce adjusted the reported costs for non-prime products to reflect the cost recorded in Dillinger's normal books and records (based on estimated sales values) and then allocated the excess costs allocated to non-prime products (*i.e.*, the difference between the reported and adjusted costs for non-prime products) to the cost of production for prime products. *See Certain Carbon and Alloy Steel Cut-to-Length Plate from France*, 82 Fed. Reg. 16,363 (Dep't of Commerce Apr. 4, 2017), and accompanying IDM at Comment 11.

On December 18, 2017, Dillinger France filed a motion for judgment on the agency record, challenging certain aspects of Commerce's final determination. ECF Nos. 27, 28. Dillinger France argued that Commerce's reliance on Dillinger France's books and records was unlawful because the books and records were not based on the costs associated with the production of its products. *See Dillinger France S.A. v. United States*, 981 F.3d 1318 (Fed. Cir. 2020) (Federal Circuit Opinion and Remand Order). This Court affirmed Commerce's decision to adjust the reported costs. *See Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1375 (Ct. Int'l Trade 2018). On September 13, 2019, Dillinger France appealed to the United States Court of Appeals for the Federal Circuit.

On December 3, 2020, the Federal Circuit remanded this issue for Commerce to determine the actual costs of prime and non-prime plate. *Dillinger France*, 981 F.3d 1318.

Pursuant to the Federal Circuit's order, Commerce reopened the record and issued a supplemental questionnaire to Dillinger France to obtain the physical characteristics of the non-prime products produced and the actual cost of producing the non-prime products. *See* Remand Questionnaire (Dep't of Commerce March 17, 2021) (P.R.R. 9). In this supplemental questionnaire, Commerce explained that it was not appropriate to rely on the overall average cost of producing all prime products as a surrogate for the actual costs of producing the specific non-prime products produced, and therefore it needed the actual product-specific cost of production of the non-prime products. *Id.*

On June 23, 2021, Dillinger France submitted its response to the supplemental questionnaire, but did not provide the physical characteristics of non-prime products nor the actual product-specific costs of production for non-prime products, as requested. *See* Dillinger Remand Redetermination Supplemental Questionnaire Resp. (June 23, 2021) (P.R.R. 16) (C.R.R. 5). As a result, Commerce applied facts otherwise available to this gap in the record, pursuant to 19 U.S.C. § 1677e(a)(1). Commerce relied on the total cost of production for both prime and non-prime products as recorded in Dillinger France's normal books and records to comply with the orders of the Federal Circuit and this Court.

This Court upheld Commerce's use of facts otherwise available, but remanded Commerce's selection of the facts otherwise available, stating that Commerce "inadequately explained its reliance on Dillinger France's normal books and records as facts otherwise available to supply missing cost information." *Remand Order,* 589 F. Supp. 3d at 1261. Thus, in accordance with the remand order, Commerce further explained why the best available information on the record to fill the gap as facts otherwise available is Dillinger France's normal books and records. *See* Remand Redetermination at 4. As Commerce explained, without the

benefit of actual cost information, "Dillinger France's normal books and records…" are the only reasonable approach for determining the allocation of total costs between prime and nonprime products, and the per-unit costs of non-prime products." *Id.* at 5.

## II. Standard of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

## III. The Court Should Sustain Commerce's Redetermination

Commerce complied with the remand order, supported its remand redetermination with substantial evidence, and acted in accordance with law. Therefore, this Court should sustain the remand redetermination and enter judgment in the defendant's favor.

### A. Commerce's Redetermination Complies With The Remand Order

Commerce's remand redetermination is in compliance with the remand order. This Court directed Commerce to further explain, or reconsider, the information used as facts otherwise available to supply missing cost information. Remand Order, 589 F. Supp. 3d at 1262. Thus, in its remand redetermination, Commerce provided further explanation regarding its reliance on Dillinger France's normal books and records as facts otherwise available and how the information is the best available information on the record and ensures that the reported costs

4

reasonably reflect the cost of producing both prime and non-prime plate. Remand Redetermination at 5-6; 11-12.

Specifically, Commerce explained that, because the total actual costs incurred by Dillinger France and verified by Commerce must be allocated to all products produced, not knowing the *actual* cost of producing the non-prime products directly impacts the amount of costs assigned to the production of prime products. Remand Redetermination at 5. If too much or too little cost is assigned to the non-prime products, then the converse – too little or too much cost – will be assigned to the prime products produced. *Id.* Indeed, due to the nature of Dillinger France's products, the creation of non-prime products is a consequence of the production of prime products because Dillinger France does not *intend* to manufacture non-prime products.

For example, while Dillinger France may intend to produce 100 prime units, it may conclude after quality testing that two of the units are imperfect plates that are not suitable for use in the same applications as prime products. *Id.* at 6. As a result, relying on Dillinger France's normal books and records, as facts otherwise available, to value both the prime and non-prime merchandise is the only reasonable approach. Commerce's approach recognizes that, where Dillinger France cannot (hypothetically) produce 98 perfect plates without producing two imperfect plates, the lost value of the two imperfect plates constitutes part of the cost of producing the 98 perfect ones and should be accounted for as such. *Id.* Therefore, Commerce concluded that Dillinger France's normal books and records are reasonable to use as facts otherwise available because Dillinger France's books and records similarly recognize that the lost value of the non-prime products – an inevitable result of Dillinger's production of prime products – is appropriately considered to be a cost of producing the prime products. *Id.*

Dillinger France argues that Commerce has not complied with this Court's instructions

because Commerce has "not made any change in its original determination and continues to write down the reported costs of non-prime plate to its sales value and shift these costs to prime plate, the exact thing the CAFC found to be unlawful." Dillinger France Cmts. at 5.  As an initial matter, and as previously explained by this Court, the Federal Circuit "did not strictly prohibit" Commerce from relying on Dillinger's normal books and records as facts otherwise available, and this Court did not interpret the Federal Circuit's holding to prohibit Commerce from doing so.  *See* Remand Order at 14.  Accordingly, because the Federal Circuit's decision pertained to the calculations of normal value and constructed value and does not address or limit the nature of information Commerce may rely on as facts otherwise available, Dillinger France's arguments based upon *Dillinger II* fail.

Similarly, Dillinger France asserts that the Federal Circuit has forbade "the reporting of a non-prime product's production costs based upon sales value" in *IPSCO, Inc. v. United States*. Dillinger France Cmts. at 10, citing 965 F.2d 1056 (Fed. Cir. 1992).  Where the Court in *IPSCO* focused solely on Commerce's calculations regarding constructed value, here the issue is the information that Commerce may rely on as facts otherwise available.  The Federal Circuit nor this Court did not address or limit the nature of the information may rely on as facts otherwise available, and thus Dillinger France's reliance on *IPSCO* is unavailing.

Dillinger France argues that Commerce should accept its "estimated" costs of producing non-prime products because Commerce relied on the costs assigned to non-prime products in the normal books and records of the respondent in *Husteel Co. v. United States*, 552 F. Supp. 3d 1405 (Ct. Int'l Trade 2022).  In *Husteel*, Commerce relied on these costs because it determined that the respondent "does not separately classify prime and non-prime products, nor does it value these products differently for inventory purposes, but rather assigns them full cost" and that the

respondent's "reported costs reflect the actual costs of producing non-prime products." *Husteel Co.*, 552 F. Supp. at 1411. Unlike the respondent in *Husteel*, Dillinger France values prime and non-prime products differently. Specifically, Dillinger France values non-prime products at their likely selling price, rather than full cost. Thus, there is no conflict between *Husteel* and Commerce's remand redetermination. See Remand Redetermination at 11.

Second, contrary to Dillinger France's argument, neither this Court nor the Federal Circuit directed Commerce to change its original determination or to change its use of Dillinger France's books and records as facts otherwise available. This Court ordered that Commerce "further explain" its reliance on Dillinger France's normal books and records as facts otherwise available. Remand Order at 16. Moreover, this Court noted that "while the Federal Circuit directed Commerce to 'determine the actual costs of prime and non-prime products' to calculate normal value, this directive does not necessarily identify – or cabin – what information Commerce may or may not rely upon as facts otherwise available…once the agency concludes it cannot 'determine the actual costs of prime and non-prime products.'" Remand Order at 14. Thus, Commerce's remand redetermination adhered to both this Court and the Federal Circuit's directives and should be sustained.

### B. Commerce's Redetermination Is In Accordance With Law And Supported By Substantial Evidence

Commerce's remand redetermination is also in accordance with law. This Court has already determined that Commerce's use of facts otherwise available is appropriate and in accordance with law. *Remand Order*, 589 F. Supp. 3d at 1260. As discussed above, and in compliance with this Court's order, Commerce further explained its selection of information to use as facts otherwise available, and why such information was the best information available on the record and reasonably reflected the cost of producing both prime and non-prime plate.

19 U.S.C. § 1677e(a) states that:

> If —
> (1) necessary information is not available on the record, or
> (2) an interested party or any other person—
>> (A) withholds information that has been requested by the administering authority or the Commission under this subtitle,
>> (B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject to subsections (c)(1) and (e) of section 1677m of this title,
>> (C) significantly impedes a proceeding under this subtitle, or
>> (D) provides such information but the information cannot be verified as provided in section 1677m(i) of this title,
>
> the administering authority and the Commission shall, subject to section 1677m(d) of this title, use the facts otherwise available in reaching the applicable determination under this subtitle.

19 U.S.C. § 1677e(a) does not prescribe what information Commerce must use, or the parameters within which Commerce must remain. Thus, Commerce continued to rely on the allocation of total costs between prime and non-prime products as recorded in Dillinger France's normal books and records as facts available, pursuant to 19 U.S.C. § 1677e(a)(1). The information recorded in Dillinger France's normal books and records, including the likely selling price of non-prime products, to allocate costs for the period of investigation is the most reasonable information on the record to fill the informational gap caused by Dillinger France's failure to provide either the actual cost of producing non-prime products and their physical characteristics, or other information from its production records. Remand Redetermination at 9-10.

Dillinger France argues that the selection of facts available must correspond to the cost of materials or other processing employed in producing non-prime products, as opposed to its own estimated valuation. Dillinger France Cmts. at 6. Thus, Dillinger France argues that Commerce failed to explain how the likely selling prices correspond to the cost of materials or other processing used in producing non-prime products, and such use of the likely selling prices was

unreasonable and inaccurate. *Id.* at 6, 9. Dillinger France additionally argues that Commerce's shifting of production costs from non-prime products to prime products is contrary to 19 U.S.C. § 1677b(b)(3), which provides that the reported costs of production "shall be an amount equal to" the cost of materials or other processing employed in producing the merchandise. *Id.* at 12.

As an initial matter, 19 U.S.C. § 1677e(a) does not require Commerce to select facts otherwise available that correspond to the cost of materials or other processing employed in producing non-prime products. *See* 19 U.S.C. § 1677e(a). However, Commerce selected, as facts otherwise available, the best available information on the record that reasonably reflected the cost of producing both prime and non-prime plate: Dillinger France's *own valuation of the non-prime products*. And, indeed, as set forth below, Commerce *did* explain how the likely selling prices in Dillinger France's books and records correspond to the cost of materials or other processing used in producing non-prime products. Remand Redetermination at 12-13. Further, there is no record evidence to support Dillinger France's assertion that Commerce's reliance on the likely selling price recorded in its normal books and records is an unreasonable basis for the allocation of costs to non-prime products. *Id.*

Substantial evidence supports Commerce's conclusion that the use of the likely selling price of non-prime products results in a reasonable allocation of total costs to prime products because it recognizes the total direct costs (*i.e.*, direct materials and conversion costs) and indirect costs (*i.e.*, the lost value of the non-prime plates) attributable to the production of prime plates. *Id.* at 15. For example, Dillinger France's audited financial statements explicitly acknowledge that the lost value attributable to the production of non-prime products is an indirect cost of producing prime products. *Id.* In Note II.4.1 of Dillinger France's audited financial statements, Dillinger France explains that it values prime products at "their weighted-

9

average production cost, this cost including direct and indirect costs that can reasonably be related with their production." *Id.* The audited financial statements also explain that "the stock of {non-prime} sheet metal is valued at its likely selling prices." *Id.* Importantly, Dillinger France's auditor expressly acknowledged that Dillinger France's practice of allocating the lost value attributable to the production of non-prime products to prime products resulted in a reasonable allocation of both the direct and indirect costs to the production of prime products. *Id.*

      Thus, Dillinger France's assertion that the allocation of lost value to non-prime products results in an inaccurate and impermissible allocation of manufacturing costs to the pool of costs to be allocated to prime products ignores not only its own justification for this accounting treatment in its audited financial statements, but also the fact that Dillinger France's failure to supply this information is the *reason* Commerce does not have the actual costs of producing non-prime products. *Id.* at 16. Accordingly, because Dillinger France did not submit information which would have permitted Commerce to determine the actual costs of producing non-prime products for the purposes of calculating normal value, Commerce does not have the necessary information with which to complete its margin calculation. It is reasonable and in accordance with law for Commerce, as facts otherwise available, to rely on record information consisting of Dillinger France's normal books and records to fill in the gaps of the record.

      Further, there is no evidence on the record to support Dillinger France's argument that its costs of producing non-prime products cannot be lower than its cost of producing its prime products. *Id.* at 13. Dillinger France's argument that its recording of non-prime products at the likely selling price must be lower than the cost of producing the product due to the application of the lower of cost or market principle is an unsupported assumption. It is possible that Dillinger

10

France profited on some of its sales of non-prime products. *Id.* Without the record containing physical characteristics and actual cost of production information for the non-prime products produced, Commerce reasonably declined to make these inferences. Thus, Dillinger France's argument that Commerce's reliance on its normal books and records is unreasonable and that the costs of producing non-prime products cannot be lower than the costs of producing prime products is without merit.

      Dillinger France further argues that the calculation it reported using specific yield rates for regular plate and line-pipe plate is the "most reasonable calculation" and most accurate information on the record. Dillinger France Cmts. at 10. However, the assertion that Commerce must rely on its proffered "estimate" overlooks Dillinger France's decision not to provide Commerce with information concerning the physical characteristics of the non-prime merchandise produced or the actual product-specific costs of producing non-prime products. *Remand Redetermination* at 12. Dillinger France's argument that its proffered "estimate" is the most reasonable calculation because it was developed using Dillinger France's product-line specific overall yield rates is without merit, because the product-line specific yield rates do not support Dillinger France's assertion that its actual costs of producing non-prime products on average equaled its average costs of producing prime products. *Id.* Because Dillinger France did not provide information concerning the physical characteristics of non-prime products, there is no evidence to support an inference that the dispersion of the physical characteristics of non-prime products is the same as the dispersion of the physical characteristics of prime products. *Id.* Thus, Dillinger France's likely selling prices contained in their books and records continue to the be the best available information on the record for Commerce to use as facts otherwise available.

      Finally, Dillinger France again argues that Commerce has imposed an impermissible

adverse inference in selecting from among the facts otherwise available. Dillinger France Cmts. at 14. Commerce's reliance on its books and records to fill an informational gap created by Dillinger France's decision is not impermissible for two reasons. First, Commerce did not make a finding that an adverse inference was warranted pursuant to 19 USC § 1677e(b) – a prerequisite for applying an adverse inference when selecting from among the facts otherwise available on the record. *See, generally,* Remand Redetermination. Second, Commerce selected from among the facts otherwise available without an adverse inference, which is demonstrated by Commerce's reliance on the record information *as submitted by Dillinger France and recorded in Dillinger France's own normal books and records*. Commerce's use of the party's own information accords with Dillinger France's recognition that the information recorded in its normal books and records results in the total direct and indirect costs reasonably attributable to the production of prime products being allocated to prime products. *See Ferro Union, Inc. v. United States,* 74 F. Supp. 2d 1289, 1297 (Ct. Int'l Trade 1999) (finding that Commerce's use of a company's own information furthered its goal of determining an accurate rate). Remand Redetermination at 17-18. Dillinger France's suggestion that Commerce applied an adverse inference is simply without merit.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter final judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

|  |  |
|---|---|
| | /s/ Tara K. Hogan. |
| | TARA K. HOGAN |
| | Assistant Director |
| OF COUNSEL: | |
| | /s/ Kelly A. Krystyniak |
| AYAT MUJAIS | KELLY A. KRYSTYNIAK |
| Office of the Chief Counsel for | Trial Attorney |
| Trade Enforcement & Compliance | U.S. Department of Justice, Civil Division |
| Department of Commerce | Commercial Litigation Branch |
| | P.O. Box 480 |
| | Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Telephone: (202) 307-0163 |
| | E-mail: Kelly.A.Krystyniak@usdoj.gov |
| January 17, 2023 | Attorneys for Defendant |

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this brief complies with the Court's type-volume limitation rules. According to the word count calculated by the word processing system with which the brief was prepared, this brief contains a total of 3,634 words.

s/ Kelly A. Krystyniak

January 17, 2023